## STANDARD RICE CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5559.

Circuit Court of Appeals, Fifth Circuit.

June 16, 1930.

E. Barrett Prettyman and Frederick R. Gibbs, both of Washington, D. C. (Preston B. Kavanagh, of Washington, D. C., on the brief), for petitioner.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., Randolph C. Shaw and Sewall Key, Sp. Assts. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., and Dewitt M. Evans, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before BRYAN and FOSTER, Circuit Judges.

BRYAN, Circuit Judge.

This is a petition by a taxpayer to review a decision of the Board of Tax Appeals sustaining deficiency assessments of war and excess profits taxes proposed by the Commissioner of Internal Revenue. The additional assessments amounted to $34,600.26 for 1918 and $42,209.40 for 1919; but, as is conceded by government counsel upon the authority of Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255, rendered subsequently to the Board's decision, the collection of $31,502.21 of the assessment for 1918 was barred by the statute of limitation, thus leaving only the balance of $3,098.05 as the amount now in controversy upon the assessment for that year.

Petitioner is engaged in the business of purchasing, milling, and selling rice. It purchases rough rice from growers, mills the rice, and sells the finished product. It owns next to the largest rice mill in the country. Its purchases are made on a strictly cash basis during the fall and early winter months of each year, and its sales do not occur until the following spring. It had long been its practice to borrow money for the purpose of making purchases and to repay it as sales were made. This was considered a good business practice and was followed by preference, not from necessity, as its credit was so good that it could borrow all the money it needed upon its own notes at prevailing rates of interest without security. The average invested capital, total amounts borrowed, and net income, speaking in round numbers, were, respectively:

During 1918, $1,700,000, $2,600,000, $508,000;

During 1919, $1,800,000, $1,000,000, $570,000.

There was no borrowed capital during practically half of each fiscal year, and some of the loans were renewals. The Board found that the average amount of borrowed capital was $800,000 during 1918, and $400,000 during 1919; and that "the petitioner regularly borrows money for short periods to finance the purchase of rice during the period October to June. Owing to the high price obtaining for rice during the taxable years the borrowings of those years were in excess of the amounts borrowed in most years." The cost of rough rice purchased by petitioner exceeded $8,000,000 in the former year, and was about $4,000,000 in the latter year. During those years, owing to an advancing market caused by the war, greater than usual profits were realized by petitioner and generally by other corporations engaged in the same business. On the other hand, during the pre-war year of 1913 the rice market suffered a rapid decline, and petitioner's net profits were negligible; but the market conditions then prevailing were generally bad, and affected in a like manner the net profits

of all companies having a large stock of rice on hand.

The assessments complained of were based upon the net income derived from invested capital, and excluded borrowed capital from consideration in determining the amount of invested capital. This method of assessment complies with section 326(a) of Revenue Act 1918 (40 Stat. 1057); but petitioner contends that under the next succeeding section 327(d) it was entitled to the benefit of a special assessment under section 328 of that act.

Section 327 provides that income taxes shall be determined as provided in section 328, " * * * (d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328." And section 328 provides: "(a) In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer * * * for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income * * * for such year. * * * In computing the tax under this section the Commissioner shall compare the taxpayer only with representative corporations whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances."

In support of its contention petitioner argues that an "abnormal condition" affecting its income within the meaning of section 327 would be shown by proof that its business was operated on borrowed capital in large part or in amounts substantially greater than were used by its competitors; or by proof that its net income was unusually low, as compared with the net income of its competitors, in 1913, thus depriving it of the opportunity to have its war profits taxes credited with an amount equal to its average net income for the pre-war period covered by the years 1911, 1912 and 1913, as provided by sections 310 and 311 of the Revenue Act 1918. A member of the Board who conducted the hearing on the petition ruled that it was not incumbent upon petitioner to prove that its borrowed capital was substantially greater than that of its competitors, but the Board's original opinion overlooked that ruling and stated that, as the evidence failed to show whether petitioner's borrowed capital exceeded that of its competitors, it could not be determined whether the amounts petitioner had borrowed were abnormally large. However, on a motion for rehearing, based upon these inconsistent rulings, the Board held that evidence of the borrowings of representative competing corporations would be immaterial, because petitioner's borrowings were made in the ordinary course of business, and it had the right to deduct from its gross income the interest it had paid upon borrowed capital. The final decision of the Board is in accord with the position taken from the beginning and still insisted on by petitioner, which is that under section 327 "the tax rates of competitors had no bearing upon the existence of the abnormal conditions, but bore only upon the hardship which the abnormality caused." It therefore affirmatively appears that the Board, after a full and fair hearing of all the evidence which it considered material, exercised its jurisdiction to review, and affirmed the Commissioner's finding to the effect that petitioner was not entitled to a special assessment under section 327 as claimed.

It may be assumed that the decision of the Board would be subject to review here if the Board had refused to take jurisdiction, or had disposed of the case arbitrarily or without exercising its own independent judgment. But the power of the Commissioner to determine in the first instance whether a taxpayer is entitled to a special assessment under sections 327 and 328 of the 1918 Revenue Act is discretionary in character; and the power of the Board to review such determination is likewise discretionary. Where, as here, the Board has fairly exercised its power of review, and no abuse of discretion is shown, in our opinion its decision is not reviewable by the courts. In Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, it was held that the Court of Claims was without jurisdiction in an original suit by a taxpayer to review a determination of the Commissioner refusing a special assessment. In the course of the opinion it was said that such jurisdiction if possessed by the Court of Claims would also be possessed by the federal district courts. It would seem to follow that the Commissioner's determination could not

be challenged by an original suit in any court. It had previously been held that the Board of Tax Appeals had authority to review a determination by the Commissioner as to special assessments, Blair v. Oesterlein Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. 249; but in exercising that authority, it was pointed out in the Williamsport Case, the Board acts, not as a court, but as an administrative agency in the executive branch of the government. As courts of original jurisdiction are without authority to review special assessments, so also in our opinion are the Circuit Courts of Appeals without such authority in the absence of an abuse of the discretion committed to the Board of Tax Appeals. It is true that the courts of appeals are given broad power to review decisions of the Board, 26 USCA § 1226; but that power extends only to questions of a judicial character. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, relied on by petitioner, dealt with questions of law and not with mere matters of administrative discretion. It is not reasonable to suppose that Congress intended that a right of review of special assessments should depend on any difference between original and appellate proceedings.

The petition for review is granted as to that part of the special assessment for the taxable year 1918 which was barred by the statute of limitations, but in all other respects it is denied.

FOSTER, Circuit Judge, concurs in the result.