## INGRAM v. BOWERS.

District Court, S. D. New York.

Feb. 9, 1931.

Wise, Whitney & Parker, of New York City (Francis C. Lowthorp and James A. Dilkes, both of New York City, of counsel), for plaintiff.

Robert E. Manley, Acting U. S. Atty., of New York City (Walter H. Schulman, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

Action at law is brought to recover additional income taxes for the years 1918, 1919, and 1920, paid under protest by the plaintiff as ancillary administratrix of Enrico Caruso, deceased. By stipulation the case was tried before a jury of one and both sides moved for a directed verdict.

The case concerns the taxability of income received by Caruso by reason of the sale of phonograph records outside the United States, it being conceded that the singing by Caruso for the manufacture of such records occurred within the United States. The plaintiff contends: First, that Caruso was a nonresident alien, a proposition which the defendant disputes; and, second, that the amounts in question were not income from sources within the United States, which the defendant also disputes.

Caruso was the foremost singer of the world. His fame was international, although the greater part of his singing during the last ten years of his life was done in the United States. He was born in Italy and always remained a subject of that country. For many years prior to his death in 1921, he spent about six months of the year in the United States, singing at the Metropolitan Opera House in New York City and giving concerts at other cities. At the close of the operatic season, he almost always returned to Italy, where he maintained a large estate. His headquarters were in the United States were the Knickerbocker Hotel, New York City, where he leased a suite of rooms, and later the Vanderbilt Hotel here. He married the plaintiff here in 1918, and in 1919 a daughter was born here. His income from opera and concert work in the United States was large and in making income tax returns he always claimed the status of a nonresident alien. During his lifetime, no question seems to have been raised as to this being his real status.

Among his other engagements, Caruso was under contract with the Victor Talking Machine Company, a New Jersey corporation, to sing for the purpose of enabling the Victor Company to make phonograph records of selections rendered by him. By contract dated April 3, 1909, he agreed to sing selections at the Victor laboratories in Camden, the Victor Company to pay him a royalty of 50 cents on each larger record and a royalty of 25 cents on each smaller record of his voice which it should sell. The contract was to continue for twenty-five years and was exclusive in the sense that Caruso bound himself not to

sing for the purpose of making phonograph records for any one else. On January 1, 1919, this contract was superseded by a new one, under which Caruso was to render forty selections at the Victor laboratories. The Victor Company bound itself to pay Caruso a royalty equal to 10 per cent. of its list price on all records of his voice which should be sold, and it "guaranteed" a minimum payment of $100,000 a year during his life but not to exceed ten years. (It may be noted here that for the remainder of Caruso's life the royalties on the percentage basis were far in excess of $100,000, so that the "guaranty" did not become operative.) The 1919 contract also contained a provision to the effect that Caruso would not permit any records of his voice to be made by any other concern.

In performance of these successive contracts, Caruso would go to Camden and sing operatic selections. The sound would be recorded on wax, from which a master matrix would be made. From this master matrix the records for sale in the United States were manufactured. Records of Caruso's voice were also sold in other countries under the Victor contracts, and it is in relation to the royalties measured by sales in these countries that the present case arises. By contracts with companies doing business in Canada and in England, the Victor Company agreed to furnish such companies with matrices of its selections. One of the terms as to payment by the foreign companies was that they should pay the Victor Company all royalties which the latter was called upon to pay the artist. Pursuant to such contracts, the Victor Company sent various matrices of songs by Caruso to the foreign companies, and in due course they credited the Victor Company with sums of money representing the royalty which the Victor Company was obligated to pay Caruso, the amounts depending of course upon the number of records sold by the foreign companies. These sums were credited to Caruso on the Victor books and were paid to him along with the payments for records sold within the United States.

Upon an audit of Caruso's income tax return for 1918, the commissioner added the sum of $18,536.25 to his taxable income as the amount received by him from the Victor Company because of the sales of records abroad. The tax thereon was $13,924.69. Similarly for the year 1919, the sum of $1,789.75 was added to income, and a further tax of $1,086.86 was assessed. Similarly for 1920, the sum of $36,400.59 was added to income, and a further tax of $25,844.42 was assessed. The plaintiff paid these amounts, totaling $40,855.97, under protest and brought this action to recover them.

Section 213(c) of the Revenue Act of 1918 (40 Stat. 1066) deals with nonresident aliens and provides that in their case "gross income includes only the gross income from sources within the United States."

■ The first issue is whether Caruso was a resident alien or a nonresident alien during the three years in question. If he was a resident alien, he was taxable upon his entire net income, irrespective of source. But I have no doubt that his status was that of a nonresident. His original residence was in Italy, and there is no satisfactory evidence of an intention to abandon that residence. His stays in the United States were transitory and, except for one or two occasions, were only for the purpose of fulfilling operatic and concert engagements. Granting that domicile and residence are not synonymous under the income tax statutes [Bowring v. Bowers (C. C. A.) 24 F.(2d) 918], I am persuaded that Caruso's residence as well as his domicile was in Italy. He was therefore taxable only on income from sources within the United States.

■ The second issue is not so easy of solution. Did the moneys received by Caruso on account of foreign sales of records constitute income from sources within the United States? I have reached the conclusion that they did. The contracts which Caruso made with the Victor Company were contracts requiring him to render services. They called upon him to sing for Victor and to refrain from singing for any other phonograph company. For this he was to be paid by Victor according to the number of records sold, with a minimum compensation to be paid in any event. The contracts were in no sense contracts of sale or of license. Caruso had no proprietory right, title, or interest in the matrices or in the records. It is true that compensation was measured, in part at least, by the number of records sold and was referred to as a royalty; but the fact remains that the arrangement was one to render services in his capacity as a singer, as thoroughly as if the compensation had been a set sum.

The services rendered by Caruso were rendered in the United States. I think that this is the decisive feature. Those services were the source of all his income derived from the Victor contracts. It cannot be denied that but for the sales abroad part of this income would not have accrued. An event in a foreign country was necessary before the income

became payable. But this cannot obscure the fact that the source, the origin of the income was Caruso's singing in Camden, N. J. I cannot see any difference in principle between this case and a case where a lawyer performs services in New York on a lawsuit pending in London, his compensation to be contingent upon success in the lawsuit. No income is realized until the happy issue of the suit in London, but clearly the source of the income, when realized, was the work done in New York. Or suppose a nonresident alien spends a year in New York working as sales manager for a merchandising company, his compensation to be a percentage of the proceeds of sales, and part of the sales are made in Canada and Mexico. Beyond doubt his earnings represent income from sources within the United States, where all his work was done, despite the fact that the amount of his earnings was enhanced by sales which took place in foreign countries. The same is true here. It seems to me that where a singer makes and performs in the United States a contract to sing for a phonograph company, for which he is to be paid a fixed sum for each record sold or a percentage of the list price of the records sold, the compensation so received is income from sources within the United States; the fact that some of the sales were made in foreign countries is immaterial.

I have considered the cases holding that where a life insurance agent has obtained policies in earlier years, under an agreement with the insurance company that he is to receive a commission out of all renewal premiums on such policies, such commissions received by the agent in later years will be deemed income for the years when received. Edwards v. Keith (C. C. A.) 231 F. 110; Woods v. Lewellyn (C. C. A.) 252 F. 106. These cases stand for the proposition that where a person performs services for compensation conditionally promised, no income is realized until such time as the condition is performed; the time when the work was done is unimportant. The proposition is clearly a sound one and would apply to the present situation if there were any question as to the time when Caruso received income under the Victor contracts. See, also Zimbalist v. Anderson (D. C.) 23 F.(2d) 328, affirmed in (C. C. A.) 38 F.(2d) 57. But here the question is one of place, not of time; the search, under the terms of section 213(c) of the Revenue Act 1918, is for the territorial source of the income. And, as already pointed out, it seems to me that the place where the work is done, and not the place where the later event fixing compensation occurs, is the source of the income, in cases where the income is from the exercise of a profession or vocation as in this case.

I have already said that the controlling fact is that Caruso's part in the making of the records was performed in this country. There are, however, other elements in the case which reinforce the conclusion that the source of this income was within the United States. It was the reputation which Caruso had won by his operatic and concert successes in the United States that led to the making of the Victor contracts. It was here that the contracts were made. It was here that the payments under the contracts were made. The payments were the obligation of a company incorporated and doing business here. The fact that the foreign sales were made by other companies is of no consequence; the situation is the same as if Victor had made such sales directly. It would have been accountable to Caruso for the agreed amount or percentage in any event, even if it had received nothing from its contractors in England and Canada.

My conclusion is that the income was from sources within the United States and was therefore taxable. A verdict for the defendant is accordingly directed.