## KEKAHA SUGAR CO., Limited, v. BURNET, Commissioner of Internal Revenue.

### No. 5098.

Court of Appeals of District of Columbia.
May 4, 1931.

W. W. Spalding, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, John MacC. Hudson, C. M. Charest, and S. S. Faulkner, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a decision of the Board of Tax Appeals holding petitioner liable for a deficiency of income excess profits taxes for 1920 in the amount of $51,475.23.

A brief statement of the facts is necessary. Petitioner is, and has been for more than thirty years, a planter and manufacturer of sugar, with a plantation and factory on one of the islands of the Hawaiian group. Its plantation is owned in fee by the territory of Hawaii, as successor of the kingdom of Hawaii. Up until May 31, 1920, it occupied its land as sublessee of one Knudsen and his assigns, and paid its rentals in percentages from 2½ to 9 per cent. of the sugar produced from cane grown on the leased land. In actual practice, it paid the agreed percentages in dollars and cents. In its findings of fact, the Board of Tax Appeals says: "The petitioner, with the approval of the Commissioner of Internal Revenue, has for many years kept its accounts and made its federal income-tax returns on the so-called 'crop basis,' as permitted by the Treasury Regulations. * * *" In the Hawaiian Islands, a crop of sugar cane is planted in the spring of one year, brought under cultivation in the fall of the following year, and

harvested and manufactured into commercial sugar in the third year. During each calendar year, work is being performed on three separate crops—the crop that is being harvested, the crop under cultivation which was planted the prior year, and the crop that is then being planted which will be harvested two years thereafter. The crop basis of accounting is in general use on the sugar plantations of the islands, and, under that system, a crop is treated as a venture, and an account kept for each crop. The expenses of the crop from the preparation of the soil to the manufacture of the cane into sugar is charged to the crop account, and all receipts from the crop are credited to the crop account. When the crop is disposed of, it is then determined whether a profit was realized or a loss sustained.

In 1918, petitioner paid as rental $114,-159.58, representing the market value of the sugar which the lessor was entitled to receive from the crop of that year. It charged one-third of that amount to the 1918 crop, one-third to the 1919 crop, and one-third to the 1920 crop, and, in its return for 1920, deducted the amount of the payment allocated to the 1920 crop, and it is this deduction which the Commissioner refused to allow, and the correctness of this is the first question for our decision.

The Board sustained the Commissioner, saying: "In 1918 it paid $114,159.58 as the rental for that year. One-third of this was charged on its books to the 1920 crop and deducted in computing 1920 income. Petitioner contends that, since the plantation was used during 1918 for the cultivation of three crops this represented a rental for all of the land and that on the crop system of accounting it may properly allocate one-third of this rental to each of the three crops. The respondent (Commissioner), on the other hand, contends that such a rental payment is unlike other expenses of producing the crop and may not be allocated over three crop years, that the lease provides for a payment in kind which must necessarily be taken from the crop harvested, and that the rental may only be deducted as a part of the cost of such crop. We are of the opinion that the respondent is correct in his contention. The proof of this may be seen if we look at the situation in which the petitioner would have found itself had it not been able to secure the renewal of its leases beyond 1920. In such a situation, following the basis on which the 1918 rental was apportioned, the rental paid in 1919 would have been apportioned one-half for the crop of that year and one-half for the crop of 1920 and the rental paid for 1920 would all have been apportioned to the 1920 crop, for the petitioner would not have cultivated any 1921 or 1922 crops and could therefore not have charged any part of the rent for 1920 to such crops. The result would be that the 1920 crop would be charged as rental with one-third of the rent paid in 1918, one-half of the rent paid in 1919 and all of the rent paid in 1920. Such a situation would obviously work a distortion of income."

And, in the argument before us, the Commissioner insists, first, that the expenditure so made in 1918, which we understand to mean the rental paid in that year, had no relation to the 1920 crop; second, that to allow one-third of it as a deduction in 1920 would effect a distortion of income for that year; and, third, that in any event it was the payment of a general expense not identified with the crop or crops of any year or years.

We have given the subject careful consideration, and are unable to agree with the Commissioner in any of these contentions. Section 212 of the Revenue Act of 1918 (40 Stat. 1057, 1064) provides: "(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

And section 234 (a) (1) provides that there may be a deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year * * * including rentals or other payments required to be made as a condition to the continued use or possession of property. * * * "

And Treasury Regulations 45, article 38, provides: " * * * If a farmer is engaged in producing crops which take more than a year from the time of planting to the time of gathering and disposing, the income therefrom may be computed upon the crop basis; but in any (all) such cases the entire cost of producing the crop must be taken as a deduction in the year in which the gross income from the crop is realized."

It is conceded that petitioner's method of

accounting for rentals paid, namely, the allocation of such rentals proportionately to the three crop years, was regularly employed in its books of account, and that its treatment of this expense had been consistent throughout the many years of its operations, and also that this basis of accounting is in general use on sugar plantations throughout the island, and that, in the determination by the Commissioner of petitioner's tax liability for the years prior to 1920, no attempt was made to treat the entire rental paid in any year as a deduction for that year. We are faced, therefore, at the outset with a tacit approval by the Commissioner of petitioner's accounting method as it affected its tax liability for all the years except the one in question, and with the fact of settlement by the Commissioner with petitioner of its tax liability for these prior years on that basis. This in itself would indicate that the method adopted as to such prior years was in the opinion of the Commissioner such as fairly to reflect the income. But, without regard to all of this, we find no merit in the argument now made that the method adopted of charging the rental paid in a given year against the crops then growing and maturing in different years has no relation to the crops of those particular years. The plantation was leased in its entirety, but, having regard to the nature of the crops for which it was to be used, it was, as to each year, planted in crops maturing that year, the next year, and the year after. The rent payable, it is true, was payable annually out of the crop harvested that year, but that crop occupied but a third of the total area. The crop of the next year and the crop of the following year each occupied a like portion, and if, as the Board found to be a fact, each crop is to be treated as a separate venture and all expenses incident to its planting, harvesting, and manufacture charged against it when it matures, it would seem to us a normal and reasonable method to charge against it one-third of the total rental paid during each of the three years from its planting to its manufacture. If the lessee, instead of paying in kind, had paid in money at a fixed sum per year, the result, under petitioner's method, would have been to charge to each crop the same proportion of the annual rent. That it was payable in a percentage of the crop and therefore was larger or smaller as the crop or the price varied, we do not think affects the principle. Nor are we any more impressed with the argument that, because petitioner's lease would have expired in 1920, except for a renewal, which was se-

cured, the criticized method of allocation of rents would have resulted in a disproportionate charge for that year and would therefore offend the statute. That the amount of rental in such case would have been disproportionate as between previous years is undoubtedly a fact, and since, in the case of a lessee of land, this situation must inevitably occur at some time, it may well be that some modification of the method looking to the final expiration of the lease should be adopted, but this it is not necessary now to consider, since, as we have seen, the lease here did not expire in 1920, but was renewed for a further long term. And so we may assume, because it is asserted and nowhere denied, the method of allocation in 1918, which is complained of, was repeated in 1920, and, instead of the suppositive case suggested by the Board, namely, "that the 1920 crop would be charged as rental with one-third of the rent paid in 1918, one-half of the rent paid in 1919, and all of the rent paid in 1920," it was in fact charged identically on the same basis as during all the preceding and succeeding years. And so likewise we think there is no point in the suggestion that the rent for the plantation is not allocable to any particular crop because it is a general expense. We think the view is more reasonable that the rent for the land occupied by a crop is as much a charge against that crop as its cultivation, harvesting, or manufacture, and equally as much a charge as certain sums of money paid by petitioner to churches and charitable organizations for welfare work among its employees, and which, though paid in a particular year, were distributed, as the rent was, over the three-year period. As to these, the Board said: "The question then arises as to whether such payments must be deducted in the year when paid or may be apportioned to the crops, as the petitioner has done upon its books. These payments were made for the benefit of employees who were working upon three crops, and in such circumstances we are of the opinion that the payments were sufficiently related to the crops so that we may not say that the system of accounting employed by the petitioner did not, in this respect, clearly reflect its income."

The next question involves an item of $30,000 claimed as an expense for 1920 under the following circumstances: Petitioner, as we have seen, held subleases expiring April 30, 1920. The term of its lessor ran until May 31 of the same year. At that time, there was in effect in Hawaii a law which gave the Commissioner of Lands the right to

extend the term of a lease for one year for the purpose of permitting a tenant to remove crops then under cultivation. Petitioner recognized the desirability of being in possession of the leased property at the termination of the lease from the territory, and therefore of acquiring the right of occupancy for the month of May, 1920. It therefore began negotiations with its lessor in 1918 to accomplish this, and these negotiations resulted in the payment to lessor in December, 1918, of a lump sum of $240,000 for his interest in the entire balance of the term. Petitioner insists that $30,000 of the sum so paid was rent specifically for May, 1920, and bases its claim on the fact that possession through the month of May would give it the position of a tenant in possession and therefore enable it to avail of the Hawaiian law giving the right of extension for another year, and that this right had a special value. It therefore estimated the commuted value of the rent to accrue during the unexpired term of the lease at $220,000, and added to this sum the further sum of $30,000 as the value of the extension for May, and its board adopted a resolution authorizing negotiations with its lessor on this basis. The representative of the lessor, in the negotiations, claimed a value of $50,000 for the month of May. Nothing more than this is shown, except that the assignment for the entire remainder of the term, including May, was obtained for $240,000, and a receipt taken in the following words and figures, namely:

"$240,000.00

"Honolulu, Hawaii, December 4th, 1918

"Received of American Factors, Limited two hundred and forty thousand dollars being the consideration for the assignment by Augustus F. Knudsen and Eric A. Knudsen to Kekaha Sugar Co., Ltd., of the balance and full remainder of the term of Government Lease No. 164, dated June 1, 1890.

"——————     "Bishop Trust Co., Ltd.
          "[Signed] by E. W. Sutton
                    "Vice Pres.

"Ledger Account
"Kekaha Sugar Company, Ltd."

The Board found: "The agreement appears to have been reached on the basis of a lump sum of $240,000 for the balance of the term and it is our opinion that the payment must be treated on this basis."

The question whether any specific amount of the gross sum paid should be charged specifically to the month of May, 1920, is not, we think, free from doubt. That the posses-

sion of the property for this month was of importance to petitioner is perfectly clear, but it is by no means clear whether $30,000, or any other specific amount, may properly be said to represent that value. When the transaction was completed, it was, as we have seen, for a lump sum. The commuted value of the rent to accrue for the unexpired term of the lease was estimated by petitioner at $220,000. At what amount it was valued by lessor we do not know. Petitioner actually paid $20,000 in excess of this amount, but whether this $20,000 increase over its estimate is necessarily chargeable to the month of May, or to some other factor or inducement, is not disclosed in the record. So far as we can tell from a careful examination, the lessor and the lessee negotiated on a basis in which the element of speculation was necessarily involved. What different items of value pro and con induced the one to demand and accept and the other to pay the $240,000 is not shown, and we do not think we should undertake by guesswork, or the application of any rule of our own, to supply this deficiency. The Board having found the entire $240,000 payable for a definite term, and counsel at the hearing apparently having agreed that that term covered a period of 29 months from January 1, 1919, to May 31, 1921, and should properly be distributed over that period, except as petitioner is entitled to any portion of the total sum for the month of May, we are unable to say that the finding of the Board is not supported by substantial evidence, and we think we should not disturb it. See a discussion of this subject generally in Burnet v. Houston, 51 S. Ct. 413, 75 L. Ed. ——, decided by the Supreme Court April 13, 1931.

This leaves for consideration only the decision of the Board in rejecting a claim for special assessment under sections 327 and 328 of the Act of 1918 (40 Stat. 1093). We think that, in the absence of a charge of fraud, abuse of discretion, or other irregularity, we are without jurisdiction to consider this question. The determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, with the right of review by the Board of Tax Appeals (Blair v. Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. 249), and on such review the Board acts, not as a court, but as an administrative agency, and we think the rule is well established that such discretionary acts may not be reviewed by appellate courts except in the special circumstances already mentioned. It has been

so held by the Third circuit in Cramer & King Co. v. Commissioner, 41 F.(2d) 24, and in the Fifth circuit in Standard Rice Co. v. Commissioner, 41 F.(2d) 481. In the present case it is not claimed that any of these circumstances exist, and we think the question is foreclosed against petitioner on the strength of Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985.

The decision of the Board will be modified in accordance with this opinion by allowing the item of $38,053.19 deduction for the taxable year 1920, and, as modified, affirmed and remanded for further proceedings not inconsistent with this opinion.

Modified and affirmed.