## JEWETT & CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3.

Circuit Court of Appeals, Second Circuit.

Oct. 17, 1932.

Charles C. Marsh, of New York City (Rolph Thayer Marsh, of New York City, of counsel), for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., all of Washington, D. C., for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayer, a stove manufacturer, claimed certain deductions in its income tax returns for the years 1924 and 1925, due to obsolescence of its patterns for casting. On March 1, 1913, the cost or value of the patterns owned by it was $101,297.04, to which was added, up to and including 1923, $22,-786.22, making $124,083.26 in all. The additions of 1924 and 1925 were $2,299.95 and $1,371.78, respectively. The Commissioner computed a deduction of ten per cent. as depreciation for obsolescence, each year, beginning with 1913, which left nothing after 1923 as a base for deduction except the additions from 1914 onward. He therefore allowed as deductions ten per cent. only upon the additions. The taxpayer, which had taken no deductions before 1917, protested against this method. It asserted that there had been no obsolescence before 1917 and only six per cent. for each of the years 1917 and 1918. For the years 1919 to 1922, inclusive, it claimed, and eventually got, an allowance of ten per cent. upon the whole amount. The facts as to 1923 do not appear. As the rate of depreciation after 1918 is not in dispute the result is that if all the patterns were in 1924 and 1925, "used in the business" (section 214 (a) (8), Revenue Act of 1924, 26 USCA § 955 (a) (8), their cost or value was still the base upon which a depreciation of ten per cent. might be calculated. The tax-

payer attempted to prove this before the Board, but unsuccessfully, though one member dissented. The question—one of fact alone—is whether its evidence was so compelling that the Board should have found that all the patterns were still "used in the business."

The witnesses were the taxpayer's president and a cost accountant for the National Association of Heating & Cooking Appliance Manufacturers, whose testimony we may ignore. The president testified that until 1916 there had been little change in fashion in stoves, and, as the patterns did not wear out in use, no depreciation for either wear or obsolescence, though there was a breakage of about one per cent. yearly. Thereafter the existing patterns began to be superseded; and the critical question was whether the whole assortment continued in use, for it is plain that the older ones might still be necessary, if only for repairs. As to this the witness said that a "great many" of the patterns used in 1913 were still in use in 1924 and 1925, and immediately thereafter that none of them had been "entirely" discontinued. While the first answer, taken alone, certainly implied that some had been abandoned, the second, if true, contradicted any such conclusion. The upshot of both was that all the patterns still were used on occasion. Later in the record occurred this question: "When did those piles of unused patterns begin to accumulate? A. They started in 1914 and developed more rapidly after that." There had been no earlier mention of any "piles" of patterns or of unused patterns except as may be inferred from what we have just said; but the witness had spoken of the introduction of aluminum patterns which took the place of wooden; and later he discussed these more fully. The taxpayer maintains that the question was wrongly transcribed and should have read, "Those styles of aluminum patterns." It seems to us that the record cannot be right as we have it. The pronoun, "those," which introduced the question, necessarily referred to something mentioned before; and as it reads, the record is quite meaningless. Moreover, the witness

had just said that before 1917 the obsolescence of patterns had been negligible, and there could be no unused patterns to accumulate before it began. On the other hand, "piles" and "styles" might well be confused; the same examiner soon afterwards spoke of "the old style pattern." "Unused" and "aluminum" might also be mistaken, though less readily. The suggested phrase is at least a plausible substitute for what appears, and is harmonious with the context. However, we need not decide whether it was what the examiner asked; we need go no further than to hold, as we do, that the passage as it stands is not an obstacle to the taxpayer's position.

 It was of course possible for the Board to discredit the witness altogether. He was highly interested, and might well stretch the facts in his favor, especially upon a matter of opinion. Uncasville Mfg. Co. v. Com'r, 55 F.(2d) 893, 897 (C. C. A. 2). But this was scarcely such; the patterns were used, or they were not; and the witness knew the facts. Even so, had the Board discredited him, we might accept it, since one member at least is always present when the testimony is taken. In the case at bar it was this member, however, who dissented, so that the decision cannot rest upon the appearance of the witness. But neither the findings nor the opinion suggest that the witness was discredited, and we have as much before us as those members who decided the case. Upon the cold record it seems to us that the evidence is uncontradicted that all the patterns were in some use during the years in question. The Commissioner's ruling was certainly wrong; and whether the use was little or not, the depreciation charge should be fixed upon a base calculated upon the whole cost or value. If so, there was no deficiency.

We need not therefore pass upon the question whether in our review of the Board we are confined to errors appearing upon the record, or whether we may reverse their order because the case was not adequately presented.

Order reversed; cause remanded with instructions to annul the deficiencies assessed.