## BEAUMONT v. HELVERING, Commissioner of Internal Revenue.

### No. 5870.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1934.

Rehearing Denied Oct. 12, 1934.

GRONER and ROBB, Associate Justices, dissenting in part.

James Craig Peacock, Claude E. Koss, and John W. Townsend, all of Washington, D. C., for petitioner.

E. Barrett Prettyman, Thomas M. Mather, Helen R. Carloss, G. A. Youngquist, Sewall Key, and C. M. Charest, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a decision of the Board of Tax Appeals, and while a number of questions were argued there, only two are in issue here. These items relate to the petitioner's returns for the years 1925, 1926, 1927, 1928, and the questions are:

(1) Do certain sums received by the petitioner from American corporations while he was residing abroad constitute compensation for services rendered by him without the United States, and thus fall within the class of exempt income?

(2) Do certain losses sustained by the petitioner in gambling at Monte Carlo constitute losses incurred in transactions entered into for profit, and thus fall within a proper category of deductions?

## I. Compensation for Services.

The petitioner is an American citizen who has resided in France for eighteen years, and during the three years in question, 1926, 1927, 1928, he made one visit to the United States of about two weeks' duration. He was the president and sole stockholder of the Beaumont Investment Company and the Beaumont Investment Trust (a Massachusetts trust), and was president of the Dayton Securities Company, all of whose stock was owned by the Beaumont Investment Trust until 1928, when it was acquired by the petitioner personally. He was also vice president and minority stockholder of Commercial Investment Trust, Inc., a subsidiary of Commercial Investment Trust Corporation. The first three companies were personal holding companies, and the nature of their business can be inferred from their income tax returns for the years in question, which show the great bulk of their income derived from dividends on stock which were exempt from the taxable income of the corporations. For each of the three years in question, the petitioner received the sum of $17,500 from the Dayton Securities Company; $12,500 from the Beaumont Investment Company; $5,000 from the Commercial Investment Trust, Inc.; and $10,000 from the Beaumont Investment Trust, except that he received from the last-named company only $5,000 in 1926.

The relevant statutes allow to citizens of the United States who are bona fide nonresidents abroad for over six months of the taxable year an exemption from gross income for amounts received from sources without the United States, if such amounts constitute earned income. Revenue Act of 1926, c. 27, 44 Stat. 9, §§ 209 (a), 213, 214 (a), U. S. C. App., title 26, §§ 940 (a), 954, 955 (a), 26 USCA §§ 940 (a), 954, 955 (a); Revenue Act of 1928, c. 852, 45 Stat. 791, §§ 22 (a) (b) (9), 31, 116 (a), 119 (c), 26 USCA §§ 2022 (a), (b) (9), 2031, 2116 (a), 2119 (c).

The petitioner did not include the abovementioned amounts in his returns, and the Commissioner made a deficiency assessment. The Board of Tax Appeals affirmed the determination of the Commissioner on the ground that the evidence did not show that the sums were "compensation for personal services actually rendered," within the statutory definition of earned income.

The government concedes that the sums were received from sources without the United States, if they constituted compensation for services performed without the United States. See Ingram v. Bowers, 47 F.(2d) 925 (D. C. S. D. N. Y.). But the government contends that the petitioner rendered no services abroad; that the sums claimed represented not reasonable compensation for services rendered, but a distribution of profits; and that the Board rightly decided to this effect.

The petitioner maintains that the decision of the Board of Tax Appeals was erroneous because the Commissioner had determined, in his deficiency letters to the petitioner, that the sums in question were earned income; that this determination is presumed to be correct, and the Commissioner is estopped to deny it; that the uncontradicted and unimpeached testimony of the petitioner shows that the salaries were received as compensation for services actually performed; and that this testimony was confirmed by other evidence.

■ But it is settled that the findings of the Board of Tax Appeals must be accepted on appeal if there is evidence to support them. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Kekaha Sugar Co. v. Burnet, 60 App. D. C. 172, 50 F.(2d) 322. The petitioner's contention can be supported only on the theory that the Board of Tax Appeals indulged a mistaken presumption as to the correctness of the Commissioner's determination. But this contention cannot be supported for several reasons.

■ First, because it does not clearly appear that the Commissioner determined in his deficiency letters that the sums constituted

112

earned income. For the statement accompanying the letter relating to the 1926 and 1927 returns said: "You are advised that it is necessary that a taxpayer actually earn salaries in foreign countries when residing abroad in order that it may be exempt from income under section 213 (b) (14) of the Revenue Act of 1926 [26 USCA § 954 (b) (14)]." The statement relating to the 1928 return said: "This office holds that the salaries indicated above are not exempt under section 116 (a) of the Revenue Act of 1928, and Solicitor's Memorandum 5446, V–1, Cumulative Bulletin 49, for the reason that you, a citizen of the United States, resided in France by choice, and not in connection with your duties as an officer of the above corporations." It is true that the Commissioner allowed a credit for earned income on these amounts. Yet the statement of his reasons for denying the exemption is so ambiguous as to negative an inference that such statement was a determination that the sums constituted earned income, but could not be exempted because earned within the United States.

Second, it does not appear that the Board of Tax Appeals gave controlling weight in its decision to a presumption in favor of the determination by the Commissioner that the sums were not exempt.

■ Third, such a presumption would have been proper even if the Commissioner advanced before the Board of Tax Appeals a reason why the amounts were not exempt which he had not assigned in his deficiency letters. The question of the effect of a change in argument by the Commissioner upon the presumption in favor of his determination of taxability has been considered in at least three circuits. In each it was held that the presumption persists, since it is the Commissioner's determination of taxability and not his reasoning which is presumed to be correct. See Crowell v. Commissioner, 62 F.(2d) 51 (C. C. A. 6th), where the deficiency letter indicated that the determination of value of stock received as compensation was based on the existence of readily realizable market value, while the decision in the Board of Tax Appeals rested on the ground that such value was immaterial. See Alexander Sprunt & Son v. Commissioner, 64 F.(2d) 424 (C. C. A. 4th), involving the deduction of commissions as an ordinary and necessary expense; the Commissioner disallowed part of the amounts on the ground that they were not reasonable, while the decision in the Board of Tax Appeals was upon the ground that they were a distribution of profits. See, also, J.

& O. Altschul Tobacco Co. v. Commissioner, 42 F.(2d) 609 (C. C. A. 5th), where the Commissioner found that the corporation did not have a merely nominal capital because it owned a one-half interest in a farm, while the Board of Tax Appeals relied upon the ground that the corporation had a cash surplus which was capital within the meaning of the statute. Compare, also, Darcy v. Commissioner, 66 F.(2d) 581, 585 (C. C. A. 2d), where the court said: "The burden is upon the petitioners to show the correct amount of the tax in order to show that the commissioner's determination was wrong. * * * In a situation like this, that requires proof that the amount of the deficiency is erroneous, for it is that fact, and not the method of computation, which controls."

■ The petitioner cites a number of cases holding that where new matter is pleaded by the Commissioner the burden of proof, in respect of such matter, shall be upon him. This is the rule of practice in the Board of Tax Appeals. Crider Brothers v. Commissioner, 10 B. T. A. 338, 350; Schilling Grain Co. v. Commissioner, 8 B. T. A. 1048, 1057; Evangeline Gravel Co. v. Commissioner, 13 B. T. A. 101, 104; Falck v. Commissioner, 26 B. T. A. 1359. But these cases clearly demonstrate that the new matter with respect to which the burden rests upon the commissioner is new matter pleaded to support an additional liability, rather than an additional reason for the liability previously in question. In the present case, no such new matter was pleaded, nor did the Commissioner admit in his answer any of the elements relied upon in the Board of Tax Appeals. The petitioner could not have been surprised by the argument since the statute obviously indicated the necessary elements of his case.

■■ Thus the question reverts to the existence of evidence upon which the decision of the Board of Tax Appeals may rest. Or, as stated by Judge Learned Hand in Jewett & Co. v. Commissioner (C. C. A.) 61 F.(2d) 471, the question is whether the petitioner's evidence was "so compelling" that the Board should have found the facts in his favor. This petitioner's evidence was largely his own deposition upon written interrogatories, in which he stated that the sums were paid to him "for personal services performed as an officer of the companies. With respect to the first three companies he was directly responsible and handled their business affairs"; and that the services were performed in France and Monte Carlo. Concerning the sums re-

ceived from Commercial Investment Trust, Inc., in response to the question, "State in some detail the nature of the services which you rendered to this corporation," he testified: "I am acting in the capacity of their representative in France." Other evidence was in the form of a written stipulation of facts signed by counsel for both parties. But the whole evidence falls far short of being so compelling that the Board of Tax Appeals should have found the facts in favor of the petitioner. It neither reveals the nature and extent of the business activities of the corporations abroad, nor the nature and extent of the petitioner's services in connection therewith. His own testimony might be regarded as evasive, and is certainly uninformative touching the ultimate fact which he was obliged to establish, and without supporting facts upon which to rest his conclusion. And the Board was entitled to make its own decision from all the evidence before it, including the petitioner's.

He cites many cases holding that it is error to reject uncontradicted and unimpeached testimony. Dempster Mill Manufacturing Co. v. Burnet, 60 App. D. C. 23, 46 F.(2d) 604; Bijur v. Bendix, 52 App. D. C. 240, 285 F. 974; Storck v. Reichhelm, 44 App. D. C. 438, 443; Boggs & Buhl v. Commissioner (C. C. A.) 34 F.(2d) 859; Jewett & Co. v. Commissioner (C. C. A.) 61 F.(2d) 471; Lunsford v. Commissioner (C. C. A.) 62 F.(2d) 740; Planters' Operating Co. v. Commissioner, 55 F.(2d) 583; Toledo Grain & Milling Co. v. Commissioner (C. C. A.) 62 F.(2d) 171; Rookwood Pottery Co. v. Commissioner (C. C. A.) 45 F.(2d) 43; Pioneer Pole & Shaft Co. v. Commissioner (C. C. A.) 55 F.(2d) 861; Nichols v. Commissioner (C. C. A.) 44 F.(2d) 157; Chicago Ry. Equipment Co. v. Blair (C. C. A.) 20 F.(2d) 10.

The government cites a number of cases deciding that the Board may reject opinion testimony and reach its own conclusion from the facts. Gloyd v. Commissioner, 63 F.(2d) 649 (C. C. A. 8th); Bourne v. Commissioner, 62 F.(2d) 648 (C. C. A. 4th); Adams v. Commissioner, 65 F.(2d) 262 (C. C. A. 5th), certiorari denied October 9, 1933, 290 U. S. 660, 54 S. Ct. 75, 78 L. Ed. 572; Fidelity Title & Trust Co. v. Commissioner, 64 F.(2d) 52 (C. C. A. 3d); Uncasville Mfg. Co. v. Commissioner, 55 F.(2d) 893 (C. C. A. 2d), certiorari denied, 286 U. S. 545, 52 S. Ct. 497, 76 L. Ed. 1282; Grand Rapids Store Equipment Corp. v. Commissioner, 59 F.(2d) 914 (C. C. A. 6th); Keystone Steel & Wire Co.

v. Commissioner, 62 F.(2d) 458 (C. C. A. 7th).

But the finding of the Board of Tax Appeals in the present case was not so much a disregard of the petitioner's evidence as a decision that upon all the facts and circumstances of the case the petitioner had not proved that he performed personal services abroad for the corporations. This conclusion is not affected by the fact that the corporations themselves deducted the amounts in question in their own returns as compensation paid to the petitioner. Self-serving evidence derived from another taxpayer need not be accepted as controlling in the present case. And in the converse situation it has been held that the failure of a corporation to deduct certain amounts as compensation to employees does not require a finding that these amounts when received by the employees were gifts rather than earnings. Bass v. Hawley, 62 F.(2d) 721 (C. C. A. 5th).

## II. Gambling Losses.

The conclusion reached on the first question goes far toward deciding the second, respecting the deductibility of the petitioner's gambling losses, which are claimed in the amounts of $11,300, $9,000, and $9,804 for 1925, 1926, and 1927, respectively. The petitioner makes a similar contention here with respect to the presumption attaching to the Commissioner's finding, on the ground that the deficiency letters indicated that the reason for the assessment was the failure to present proof of the amounts involved rather than a failure to show that the transactions were entered into for profit. But for the reasons previously stated, we are of opinion that the presumption of the correctness of the Commissioner's determination of taxability is not lost because the reason advanced in support thereof changes. The question here again is whether the evidence was so compelling that the Board of Tax Appeals should have found the fact in favor of the petitioner. No evidence was presented directly bearing on the question as to whether or not this gambling was undertaken for profit. The petitioner argues that there is a presumption that gambling transactions are entered into for profit, and cites Heiner v. Tindle, 276 U. S. 582, 48 S. Ct. 326, 72 L. Ed. 714. That case involved the question whether a house originally built as a dwelling but subsequently rented for profit, if finally sold at a loss, may have such loss deducted as occurring in a transaction entered into for profit. The case presented

114

.the meaning of the phrase "any transaction" rather than the necessity of proving the profit motive. It was conceded that, from the time of rental, the house was devoted to a use for profit, and the court held that the previous acquisition of the property for what may have been a nonprofit purpose did not defeat the right of the taxpayer to claim a loss upon the sale after the property had been rented for profit during nineteen years. No case has been cited which holds that gambling transactions are presumed, for tax purposes, to be entered into for profit. In the present case they may have been entered into, as the Board of Tax Appeals suggests, for sport, amusement, or pastime, and in the absence of evidence on this issue the petitioner cannot claim the loss, for the fact that the transactions were entered into for profit is an essential element in claiming a deduction for such a loss. See Heiner v. Tindle, supra; Goldsborough v. Burnet, 46 F.(2d) 432 (C. C. A. 4th); Dresser v. U. S., 55 F.(2d) 499 (Ct. Cl.).

The decision of the Board of Tax Appeals is affirmed.

Affirmed.

GRONER, Associate Justice.

I concur in the result so far as the claim of petitioner to deductions of so-called salaries is concerned. I dissent from the conclusion that petitioner is not entitled to deduct his Monte Carlo gambling losses. The evidence shows that he regularly paid income taxes on winnings at Monte Carlo in previous years, and, further, that petitioner kept in bank at Monte Carlo what he called a hazard account into which he put his gains and from which he withdrew his losses. The Board found as a fact that the losses claimed were actually sustained in the years in question, and that gambling at Monte Carlo was legal, but found against petitioner because "it may well be that he indulged in games of chance for sport and recreation." By thus indulging imagination, the Board, though finding the losses were sustained by petitioner just as he claimed, affirms the Commissioner's assessment. In the fat years petitioner regularly reported his winnings for income taxes. In the lean years, when he undertook to deduct the losses, the right is denied on the ground that, because he is not a "professional gambler," his gambling transactions, of which he kept a daily record and for which he maintained a special bank fund, are not shown to have been entered into for profit. I think this argument is so attenuated as to be sapless.

The conclusion of the Board on this branch of the case should be reversed.

ROBB, Associate Justice, concurs in the opinion and conclusion of Associate Justice GRONER.