LOUIS D. BEAUMONT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31931, 46569, 49422. Promulgated February 9, 1932.

*James Craig Peacock, Esq., John W. Townsend, Esq.,* and *C. E. Koss, Esq.,* for the petitioner.

*O. J. Tall, Esq.,* for the respondent.

476

**478**

OPINION.

SMITH: The principal issue in these proceedings is whether the salaries received by the petitioner from the Beaumont Investment Company, the Dayton Securities Company, the Beaumont Investment Trust, and the Commercial Investment Trust, Inc., in 1926, 1927, and 1928, are exempt from taxation under the following provisions of the Revenue Acts of 1926 and 1928:

Section 213 of the Revenue Act of 1926:

> For the purposes of this title, except as otherwise provided in section 233—
>
> \*  \*  \*  \*  \*  \*  \*
>
> (b) The term "gross income" does not include the following items, which shall be exempt from taxation under this title:
>
> \*  \*  \*  \*  \*  \*  \*
>
> (14) In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States if such amounts constitute earned income as defined in section 209; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this paragraph.

Section 209 of the Revenue Act of 1926:

(a) For the purposes of this section—

(1) The term "earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. * * *

Section 22 of the Revenue Act of 1928:

\*          \*          \*          \*          \*          \*          \*

(b) *Exclusions from gross income.*—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\*          \*          \*          \*          \*          \*          \*

(9) MISCELLANEOUS ITEMS.—The following items, to the extent provided in section 116:

Earned income from sources without the United States;

\*          \*          \*          \*          \*          \*          \*

Section 119 of the Revenue Act of 1928:

\*          \*          \*          \*          \*          \*          \*

(c) *Gross income from sources without the United States.*—The following items of gross income shall be treated as income from sources without the United States:

\*          \*          \*          \*          \*          \*          \*

(3) Compensation for labor or personal services performed without the United States;

\*          \*          \*          \*          \*          \*          \*

It is agreed that the petitioner was a citizen of the United States and the facts show that he was a *bona fide* nonresident for more than six months of each of the years 1926, 1927, and 1928. Did the amounts of the disputed salaries constitute "earned income" received "from sources without the United States."

The statutory definition of earned income includes salaries and other amounts received as compensation for personal services actually rendered. In his deficiency notices covering the years 1926, 1927, and 1928, the respondent has treated the amounts in question as earned income for the purpose of computing the petitioner's earned net income credit for each of the years, but in his brief filed in these proceedings the respondent makes the contention that the evidence adduced fails to show that the petitioner actually performed any services in foreign countries for which the salaries were paid and that the amounts in question were in fact distributions of earnings or profits which the statute specifically excludes from "earned income."

In *Ingram* v. *Bowers*, 47 Fed. (2d) 925, it was said that in cases where the income is from the exercise of a profession or vocation the place where the services are performed determines the source of the income. In that case the court held that the income received by

Enrico Caruso, a nonresident alien, from royalties on the sales in foreign countries of phonograph records of his voice made in the United States constituted income from sources within the United States. See also *Louis Roessel & Co., Ltd.*, 2 B. T. A. 1141.

The petitioner in his deposition testified that the salaries in question were paid to him for personal services performed in France and Monte Carlo as an officer or representative of the companies. Nowhere in the evidence, however, are we able to find proof of any specific services performed on behalf of any of the companies from which the salaries were received. The Beaumont Investment Company, the Dayton Securities Company, and the Beaumont Investment Trust are admittedly holding companies for the petitioner's securities. The first two companies had their home offices at Wilmington, Delaware, and the Beaumont Investment Trust was a Massachusetts common law trust, which apparently had no activities. The Commercial Investment Trust, Inc., was a financing company, with its office in New York City. The petitioner was one of the vice presidents of that company. He deposed that it had a business in France of the same character as its business in the United States. He was asked to, " State in some detail the nature of the services which you rendered to the corporation." He replied, " I am acting in the capacity of their representative in France."

From the record, we can not determine that the petitioner performed any services outside of the United States for the companies from which he received his salaries.

We see no foundation for a construction of the exempting provisions of the statute which would permit a citizen, merely by absenting himself from the United States for the statutory period, to avoid the tax upon income not in any way attributable to his activities abroad and upon which as a resident he would clearly be taxable.

The legislative history of the section of the statutes in question, as shown by the hearings before the Ways and Means Committee and the Committee Reports, is enlightening. The provision first appears in the 1926 Act. It was proposed at the instance of the National Foreign Trade Council for the purpose of promoting foreign trade. We quote from the Ways and Means Committee Report on the 1926 Act:

SECTION 213 (b) (14) :

In an endeavor to take one further step toward increasing our foreign trade it is recommended in this paragraph that there shall be excluded from gross income in the case of our citizens employed abroad in selling our merchandise amounts received as salary or commission for the sale for export of tangible personal property produced in the United States in respect of such sales made while they are actually employed outside the United States, if they are so employed for more than six months during a taxable year.

In its final form, as enacted in the 1926 Act (see sections quoted above), the statute exempts all of the earned income from sources without the United States of a *bona fide* nonresident citizen for more than six months of a taxable year.

Aside from any question of statutory construction or legislative intent, we are of the opinion that the issue must be decided against the petitioner, for the reason, as indicated above, that the evidence fails to show that the salaries in question represented earned income from sources without the United States. It is not at all improbable that the business carried on by the companies required the personal attention of the petitioner only on his infrequent visits to the United States. This appears to be the situation. The inclusion of the salaries in the taxable income of the petitioner is sustained.

In his income-tax return for 1924 the petitioner claimed a bad debt deduction of $4,250, representing a loan of that amount made to one L. Paumjier in 1921. The petitioner undertook to collect the indebtedness in 1924, but learned that the debtor was unable to pay; that he had many debts and no means of paying them. The debt was not secured in any way. The petitioner was informed that the debtor had gone to South America. Petitioner consulted with his attorney and was advised that it would be useless to bring suit to collect the debt. We are of the opinion that the debt was ascertained to be worthless in 1924 and that it is deductible in that year.

In his return for 1926 the petitioner claimed the deduction of $2,000 representing a bad debt owed by one Hallandar on a personal loan of that amount made to him by the petitioner in 1914. This deduction is denied. The petitioner testified that Hallandar had promised " year after year " to pay the indebtedness, but had failed to do so. In his letter to the petitioner written in 1926 Hallandar stated that he had been ill or out of work since 1914 and that the petitioner's lawyer had called upon him several times in regard to the debt. These facts indicate that the debt was worthless prior to 1926 and that the petitioner knew of its worthlessness in prior years. The statute does not permit a taxpayer to await a favorable opportunity to deduct a known bad debt. *Avery* v. *Commissioner*, 22 Fed. (2d) 6; *Ralph H. Cross*, 20 B. T. A. 929; affd., 54 Fed. (2d) 728.

In his returns for 1926, 1927, and 1928 the petitioner claimed the deduction of gambling losses at Monte Carlo in the respective amounts of $11,300, $9,100, and $9,804. The amounts stated represent his net gambling losses for those years as computed from memoranda kept by him of his winnings and losses for each year.

The statute permits the deduction of " losses sustained during the taxable year and not compensated for by insurance or otherwise,

if incurred in any transaction entered into for profit, though not connected with the trade or business." See section 214 (a) (5) of the 1926 Act, and section 23 (e) (2) of the 1928 Act. In his deficiency notices the respondent has disallowed the deductions claimed for lack of proof of the amounts of the losses. This objection to the deductions has been met by the uncontradicted testimony of the petitioner that he kept an accurate memorandum account of his winnings and losses each year and that the losses claimed represent the net result of each year's gambling transactions.

In the Commissioner's published rulings upon the question of the deductibility of gambling losses, a distinction is made between losses incurred in legal transactions and illegal transactions. In S. M. 2680, Cumulative Bulletin III-2, p. 110, it was held that losses incurred in betting on horse racing in the State of Arkansas, where such betting is illegal, are not deductible and that losses incurred in certain forms of betting on horse racing in the States of Kentucky and Louisiana, not illegal in those States, are deductible. See also article 141, Cumulative Bulletin II-2, p. 125.

In *Mitchell M. Frey, Jr., et al., Executors*, 1 B. T. A. 338, the Board denied the deduction of the gambling losses of a resident of Pennsylvania upon the grounds that the losses, having resulted from participation in illegal pursuits, were not " incurred " within the meaning of the statute, since there was no legal enforceable liability in respect thereof, and that the gambling operations were not " transactions " within the meaning of the statute, because illegal. Cf. *James P. McKenna*, 1 B. T. A. 326. The gambling transactions under consideration here all took place within the Principality of Monaco. Even though the gambling was legal, as contended by the petitioner, we are of the opinion that the petitioner's case is not aided thereby. The deduction allowed by the statute is of losses incurred in any transactions entered into for profit. The question whether the gambling transactions under consideration were entered into for profit is a question of fact, upon which the evidence before us in these proceedings is entirely silent. We can not proceed upon a presumption that all gambling transactions are entered into for profit within the meaning of the statute. The petitioner was a wealthy man living abroad at fashionable resorts, apparently as a matter of choice. He was not a professional gambler and was not dependent upon the success of his gambling ventures for a livelihood. It may well be that he indulged in games of chance for sport and recreation and without serious concern as to the financial results. Upon the evidence the respondent is sustained in disallowing the deductions.

In his return for 1925 the petitioner claimed a deduction of $6,350 representing an alleged loss resulting from the sale of French francs in that year. The facts of record are that the petitioner on different occasions in 1925 purchased 545,000 francs at an aggregate cost of $26,350 and that he sold these francs in October, 1925, for $20,000. The evidence does not show whether the petitioner purchased or sold other francs in 1925. The petitioner kept no inventories or records of francs on hand at the beginning and at the close of the year. The respondent contends that in the absence of such inventories or records the loss on the single transaction in question is not an allowable deduction. However, there is nothing in the record to indicate, and we will not assume, that the petitioner was a regular trader in francs year in and year out, or that he had other francs on hand at the beginning and at the close of the taxable year which properly should have been inventoried. The respondent contends in his brief that the evidence does not show whether the francs sold by the petitioner in October, 1925, were purchased in that year, or the cost thereof. The petitioner's testimony upon this point is as follows:

Q. 54. Calling your attention to paragraph numbered ten of the Stipulation as to Facts, heretofore mentioned, state whether or not the loss on foreign exchange of $6,350 claimed in your 1925 income tax return involved the purchase and sale by you in that year of French francs as shown by Exhibits "C," "D" and "E" attached to said stipulation.

A. It does.

Q. 55. State on what dates, at what prices, in what amounts and from whom you purchased *the* francs on which you claimed such loss.

A. October 1st, 1925, bought 211,000 Francs costing $10,000. October 5th, 1925, bought 200,000 Francs costing $9,275. Different times in 1925, bought 134,000 Francs costing $7,075.

Q. 56. State on what dates, at what prices, in what amounts and to whom you sold *the* francs on which you claimed such loss.

A. On December 24th, 1925, I sold to the Equitable Trust Company, five hundred and forty-five thousand (545,000) Francs, receiving therefor twenty thousand (20,000) dollars. [Italics supplied.]

It seems to us that the petitioner has met the burden of proof in showing that in 1925 he purchased certain francs which in that same year he sold at a certain amount less than their cost. In our opinion the amount claimed by the petitioner in his return is a deductible loss.

The remaining issue relating to the deduction of taxes paid to the French Government by the petitioner in 1928 is settled by stipulation as stated above.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MARQUETTE and TRAMMELL dissent.