MR. AND MRS. FRANCIS M. CRONAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78185. Promulgated December 10, 1935.

*Llewellyn A. Luce, Esq.*, for the petitioners.
*James H. Yeatman, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding involves a deficiency in the income tax of the petitioners for the calendar year 1932 in the amount of $42.60, and a penalty for delinquency in filing their return of $11.65.

Francis M. Cronan, hereinafter referred to as the petitioner, is turf writer for the Washington Herald, a daily newspaper printed at Washington, D. C. In the performance of his regular duties he is required to attend the various race tracks in Maryland during their respective racing seasons. He was so employed during the calendar year 1932.

During the month of October 1932 the petitioner, while attending the races held at Laurel, Maryland, made a number of bets through the pari mutuel betting system, which is operated at that and other tracks in the State of Maryland. This form of betting is legal under the state laws. The petitioner made all of his bets, usually two or three a day, with the idea of profit. The bets ranged

in amount from $20 to $100 each. At the end of October the petitioner's gross losses for the month stood at $2,705 against gross winnings of $1,955, or a net loss of $890. A detailed list of these transactions prepared from records kept by the petitioner was submitted in evidence. The petitioner's funds then being exhausted, he stopped betting and has not since " played the races " as a business proposition.

During the taxable year 1932 the petitioner also attended the whippet races which were held at Riviera Beach, Chesapeake Beach, and Brooklynville, Maryland. The petitioner and his wife owned several dogs which they entered in the various races. The petitioner placed small bets on those races also, some of which were made through the pari mutuel system. The petitioner kept no record of these bets, but estimated that the betting and the cost of caring for the dogs resulted in a loss of at least $175.

In his income tax return for 1932 the petitioner claimed the deduction of both of the above items of $890 and $175 as losses of that year. In auditing the return the respondent requested the petitioner by letter to furnish full details of the racing bets, and on failure of the petitioner to comply with this request the respondent disallowed the deductions and determined the deficiency herein.

Section 23 (e) of the Revenue Act of 1932 authorizes the deduction by individuals of:

* * * losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business. * * *

The Commissioner's regulations do not contain any provision with respect to the deduction of gambling losses, but in his published rulings the Commissioner has made a distinction between gambling losses incurred in jurisdictions where gambling is legal and those incurred in jurisdictions where it is illegal. In S. M. 2680, III-2 C. B. 110, it was held that losses incurred in betting on horse racing in the State of Arkansas, where such betting is illegal, are not deductible and that losses incurred in certain forms of betting on horse racing in the States of Kentucky and Louisiana, where such betting is legal, are deductible. See discussion in *Louis D. Beaumont*, 25 B. T. A. 474; affd., 73 Fed. (2d) 110; certiorari denied, 294 U. S. 715.

We held in the *Beaumont* case, relied upon by the respondent in this proceeding, that gambling losses incurred at Monte Carlo, where gambling is legal, were not deductible for the reason that the evidence in that case did not show whether the transactions resulting in the losses were entered into for profit, as required by the statute. After the decision in that case the Commissioner published General

Counsel Memorandum 10873, XI–2 C. B. 85, in which he allowed the deduction of gambling losses incurred at Monte Carlo upon a showing by the taxpayer that the gambling transactions were entered into for the purpose and with the hope and expectation of profit. This ruling reads in part as follows:

Consideration must also be given to the fact that the question whether such gambling losses are properly deductible within the meaning of the statutes is not fully an open question. Although losses in illegal transactions are disallowed as deductions to the extent that they exceed the gains during the taxable year from similar transactions (*Appeal of Mitchell M. Frey, Jr., et al.*, 1 B. T. A., 338, C. B. X–2, 25; *Appeal of James P. McKenna*, 1 B. T. A., 326, C. B. X–2, 46; and I. T. 1854, C. B. II–2, 125), losses on election bets where legal have been held to be allowable deductions as losses sustained in transactions entered into for profit (I. T. 1865, C. B. II–2, 125), and losses incurred in betting on horse races where legal have likewise been held so deductible (S. M. 2680, C. B. III–2, 110). It is the opinion of this office that no logical distinction can be made between losses at legalized foreign gambling casinos and losses sustained through betting on horse races and elections where such transactions are legal, nor would the fact that the transactions took place in a foreign country be material in the case of a citizen of the United States.

In view, therefore, of the Bureau's position with respect to losses sustained through betting on horse races and elections, it is concluded that gambling losses incurred in legalized foreign gambling casinos should be treated as allowable deductions from gross income if (a) the transactions producing those losses were entered into for profit, and (b) the taxpayer submits sufficient evidence that the gambling transactions were entered into for profit to warrant the Bureau's allowance of the losses. As the taxpayer in the instant case has submitted evidence substantiating the fact that her gambling transactions were entered into for profit, the losses should be allowed as deductions.

The above ruling seems to reflect the policy of the Commissioner towards the deduction of gambling losses incurred prior to the effective date of the Revenue Act of 1934. Section 23 (g) of the 1934 Act contains the provision, which is new to that act, that " losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." In the report of the Ways and Means Committee this new provision of the act was explained as follows:

Existing law [1932 Act] does not limit the deduction of losses from gambling transactions where such transactions are legal. Under the interpretation of the courts, illegal gambling losses can only be taken to the extent of the gains on such transactions. A similar limitation on losses from legalized gambling is provided for in the bill. Under the present law [1932 Act] many taxpayers take deductions for gambling losses but fail to report gambling gains. This limitation will force taxpayers to report their gambling gains if they desire to deduct their gambling losses.

Betting on horse racing is legal in the State of Maryland, where the petitioner's losses were incurred. The petitioner testified, and his testimony is substantiated by other evidence, that all of the bets made by him during the month of October 1932 were for profit. He made all of his selections in strict adherence to a " system " of

some sort, which is not described in the evidence adduced. Whatever it was, however, we are assured that in this instance, at least, the system did not work. For, at the end of the trial period, the petitioner stood with losses of $2,705 against winnings of $1,955.

The petitioner is not a wealthy man and could not well afford heavy betting losses. The only income reported in his and his wife's joint return for 1932 is " Combined salary received from Washington Times Co. $4,161.00." The petitioner testified that he did not bet merely for sport or amusement and that he derived no particular pleasure from watching the horses run.

The instant case is readily distinguishable from those in which it has been held that gambling losses in jurisdictions where gambling is illegal are not " incurred " and do not result from " transactions " as those terms are used in the above quoted provisions of the statute. See *Mitchell M. Frey, Jr., et al., Executors*, 1 B. T. A. 338; *M. L. Heide*, 2 B. T. A. 451; and *E. F. Simms*, 28 B. T. A. 988. The evidence adduced in the instant case also distinguishes it from *Louis D. Beaumont, supra*. In our opinion the losses claimed by the petitioner on his betting on horse racing are deductible.

The loss claimed on the betting on dog races and the expense of caring for his dogs, we think, is not allowable. The petitioner apparently made no segregation of the expenses of caring for his dogs and the losses on bets on the races. He testified that the amount of $175 was an estimate of both of these items. The evidence does not show that the ownership and racing of the dogs was required of the petitioner in the conduct of his regular business. It not being shown what portion of the amount claimed as a loss resulted from betting, the deduction of the entire amount is disallowed.

The petitioner's income tax return for the calendar year 1932 bears the filing stamp of April 3, 1933, the return being due March 15, 1933. In the absence of a showing of any reasonable excuse for the delinquency, a penalty of 25 percent is proper.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*