## CITIZENS & SOUTHERN NAT. BANK et al. v. UNITED STATES.
### No. 42829.

Court of Claims.

June 1, 1936.

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. Plaintiffs are the executors of J. B. Whitehead (hereinafter sometimes referred to as the "decedent") who died during November, 1935. The decedent was a citizen of the United States and a resident of Atlanta, Ga.

2. On March 7, 1932, the decedent filed his income tax return for the calendar year 1931 showing a net income of $253,908.11 and disclosing a tax liability of $42,441.62, which was paid in installments as follows:

| | |
|---|---|
| March 7, 1932................ | $10,610.41 |
| June 14, 1932................. | 10,610.41 |
| September 16, 1932........... | 10,610.40 |
| December 13, 1932............ | 10,610.40 |

On October 4, 1933, the Commissioner of Internal Revenue issued a certificate of overassessment in amount of $229.01, and refunded that sum to the decedent.

3. On January 22, 1934, the decedent filed a claim for refund with the Collector of Internal Revenue claiming the sum of $8,396 refund for the year 1931, giving as reasons in support thereof the following:

Taxpayer for the calendar year 1931 made an income-tax return which showed a taxable net income of $253,908.11, and paid an income tax thereon of $42,441.62, which was corrected by a revenue agent to show $252,763.06 income and $42,212.61 tax.

In the preparation of said return, no deductions were taken for gaming losses sustained by taxpayer during the year at Cannes and Deauville in the Republic of France, where gaming is legally permitted, and in support of such losses copies of canceled checks and affidavits are submitted.

Taxpayer's net income and tax should therefore be as follows:

| | |
|---|---|
| Net income as corrected by agent .................... | $252,763.06 |
| Less: Gambling losses 'not claimed on return.......... | 41,980.00 |
| Corrected net taxable income ................ | $210,783.06 |

4. On February 24, 1934, the Commissioner of Internal Revenue advised the decedent by letter that his claim for refund would not be allowed because the transactions were not entered into for a livelihood, but were entered into for a pastime. The claim was rejected on a schedule dated May 9, 1934.

5. During the calendar year 1931, the decedent lost $41,980.00 at chemin de fer at Cannes and Deauville, Republic of France, in which places gaming is legally permitted. The transactions were not entered into for profit.

6. The decedent was not a professional gambler and never attempted to earn his livelihood by gambling. During the year 1931, the decedent was president of the Whitehead Realty Company of Atlanta, Ga., a corporation, the stock of which was owned by his mother, his brother, and himself, and all of which had been inherited from his father. He paid little attention to its affairs.

7. During the year 1931, the decedent was living in Paris, France, where he had lived since the year 1921, and he visited Cannes and Deauville during the regular seasons at those resorts and remained "off and on" for approximately six weeks at each place. The decedent had been visiting those resorts for at least 10 years, and had played chemin de fer there for six or seven years prior to 1931. During that entire period he was never a winner when he left the casino.

8. In playing chemin de fer the croupier's percentage is 5 per cent. of the bank, which is taken out after each play. In twenty plays the croupier's percentage would entirely consume the original stake if the player did not win in the meantime. The decedent had made a study of the game and knew that the odds were against him, but he pitted his luck against the odds and lost.

9. Some of the chips bought by the decedent included in the loss referred to in finding 5 herein were used to purchase drinks at the bar during the course of his

play, but the amount expended for this purpose is not disclosed by the record.

10. The decedent kept no book records of his gambling losses; the only record available being the checks which he issued to the casino at the end of his visits to cover his accounts there.

11. Since 1921 the decedent spent most of his time in Europe with headquarters in Paris. His income was derived from dividends on property left him by his father. He devoted little time looking after this property. The only business he had in Europe during the time was connected with a corporation which he organized in 1929 or 1930 in conjunction with two other persons with offices on Avenue des Champs, Paris, to engage in the general loan business. The capital of the corporation was approximately $20,000, which was all contributed by the decedent. The decedent as a witness could not recall the name of this corporation and could relate practically nothing about its business, which was probably closed down about 1931. The only money he ever earned was the compensation he received while serving in the Navy during the World War.

### Conclusion of Law.

Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court decides, as a conclusion of law, that the plaintiffs are not entitled to recover, and their petition is therefore dismissed.

Judgment is rendered against the plaintiffs for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

Daniel J. Gantt, of Atlanta, Ga., for plaintiffs.

Josheph H. Sheppard, of Washington, D. C., and James W. Morris, Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

### WHALEY, Judge.

■ This is a suit for the recovery of income tax for 1931. The one question involved is whether plaintiffs are entitled to a deduction on account of losses sustained by their decedent in gambling transactions in France at places where gambling was carried on legally. The applicable statute, section 23 (e), Revenue Act of 1928, 26 U.S.C.A. § 23 note, provides for the allowance of deductions for losses, if not compensated by insurance or otherwise: (1) If incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business.

Admittedly, the decedent was not engaged in gambling as a trade or business, and the losses were not compensated by insurance or otherwise. The deduction is accordingly allowable, if at all, by virtue of the second proviso which permits the allowance of the deduction if the transactions were entered into for profit even though not connected with his trade or business. The parties agree that the loss claimed was sustained, except to a possible negligible amount, and therefore the sole question remaining is whether the transactions were entered into for profit; a question of fact.

We have found adversely to plaintiffs on the factual question. We are satisfied the record fully justifies a finding that the transactions were not entered into for profit. The decedent was an individual who had inherited a great fortune and who had never earned any money, except for a short time when he was in the Navy during the World War. While testifying in 1935, he could not give an accurate statement of his net worth though he estimated that it was approximately $2,500,000. His income for 1931 (approximately $250,000) was derived from dividends on inherited property, and while he was nominally the head of one of the corporations in which he held stock he gave little time to the direction of its affairs or the affairs of any other property in which he was interested. He could not give the name of a Parisian corporation in which he had invested a considerable sum, although it had only gone out of business in 1931.

From 1921 to 1935, the decedent spent most of his time in Europe with headquarters in Paris where he led a life of leisure and as a so-called "sportsman." During these fourteen years he visited Cannes, Deauville, and other pleasure resorts spending approximately six weeks in each regular season at each of the two places mentioned. He was not a professional gambler, but, while at the various places where gambling was permitted, he indulged in that alluring pastime, particularly at Cannes and Deauville, where he

played chemin de fer. His testimony is that he played that game at those places for six or seven years prior to 1931, but that he was never a winner when he left a casino. We understand from the latter statement that he did win at times, but that the net result of play at all times was a loss. The losses in those years were not of the magnitude sustained in 1931; they are not involved in this proceeding, and decedent testified that they were not entered into for profit. We do not have, therefore, a situation which sometimes arises where an individual has been taxed in the "fat" years and denied losses in the "lean" years. Cf. Beaumont v. Helvering, 63 App.D.C. 387, 73 F.(2d) 110.

In spite of the lack of success attending his efforts over six or seven years, and in the face of the fact that the decedent realized the odds were against him, and his past experience bore eloquent testimony to that effect, he testified that he played the game in 1931 for profit when he lost the large amounts which are now claimed as deductions, and that he resorted to it for that purpose for the reason that his large income was insufficient to meet his expenses, including alimony to two wives and a pending breach of promise suit for half a million dollars. What the decedent would have us believe is that, in a game where he had consistently lost for years and where he realized the odds were against him, he proceeded to that source for the purpose of realizing a profit to meet his mounting expenses. He is the only witness, and his memory is clouded as to all other transactions except this particular gambling venture.

 Such testimony overtaxes our credulity and stretches credence to the breaking point. We do not understand that every time a game of chance is entered into with the evanescent hope that the player will win constitutes a transaction entered into for profit within the meaning of the statute. In our opinion, the words used connote transactions for profit in the reasonable sense that any business is undertaken. Surely, a reasonably prudent business man would not embark in a business venture where the odds were admittedly against him and where his own unbroken line of experience had demonstrated over a period of years that losses would be the only fruit of his efforts. Of course, many people engage in such pastimes, even though the vast majority of them lose, and

it must be so, otherwise the gambling casino could not stay in existence. But profit in the business sense is not what usually motivates the continued playing; it is the thrill and exhilaration which are inherent in taking a chance. As the Board of Tax Appeals said in Louis D. Beaumont v. Commissioner, 25 B.T.A. 474, affirmed Beaumont v. Helvering, 63 App.D.C. 387, 73 F.(2d) 110, all gambling transactions are not entered into for profit within the meaning of the statute.

The system evolved and used by the decedent, as a result of the study which he said he had made of the game, seems nothing more than a vaporous supposition that luck would attend his efforts if followed in a certain sequence, even though he knew the odds were against him and that losses by players made possible the continued operation of the club. The losses sustained are apparently large but, when considered in relation to his great wealth, large income, and his modern standards and previous habits of living, the amounts lost are not more than a man of this type might well be expected to spend in the pursuit of pleasure.

On the whole, we are satisfied that the record does not establish that the gambling transactions which resulted in the losses claimed were entered into for profit within the meaning of the statute. The petition must accordingly be dismissed. It is so ordered.