**HUMPHREY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11921.

Circuit Court of Appeals, Fifth Circuit.

July 2, 1947.

R. B. Cannon, of Fort Worth, Tex., for petitioners.

Carlton Fox and Lee A. Jackson, Sp. Assts. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and John T.

Rogers, Sp. Atty., Bur. Int. Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

In redetermining the taxes for 1941 of the petitioners as partners in the firm of Joe A. Humphrey Company, the Tax Court held that $47,431 realized by the partnership that year on notes which had been charged off as worthless in 1939 was ordinary income and not capital gain taxable at only one-half. The Tax Court also held that a wagering loss of $3,000 in 1941 of Joe A. Humphrey could not be allowed in reduction of his wagering gains because no testimony was offered that the losing wagers were transactions entered into for profit. The correctness of these two holdings is before us for decision.

1. The partnership acquired in 1938 and the early part of 1939 certain notes executed by Ellis Oil Company dated April 23, 1938, bearing ten percent interest and secured by a second deed of trust on certain oil properties of the maker. The partnership paid out for the notes $42,-200, though their face amount was some $20,000 more. In the tax return for 1939 the partnership charged the notes off as wholly worthless and took a deduction of $42,200 paid out for them, thereby securing a tax benefit. Ellis Petroleum Company went into bankruptcy and on October 13, 1941, the partnership proved its claim, which was allowed in a sum of $63,758.25 with interest after that date at ten percent, with a second lien on the property described in the deed of trust. Theretofore a · sale had been ordered to take place October 15, 1941, of the security, the property to be sold free of all liens, which 'were to be transferred to the proceeds, "the proceeds from the sale to be used to pay all costs assessable against said property and all liens in the order of their priority". The holder of the first lien was allowed to use its claim as cash in bidding, and other lienholders could use their liens in bidding a surplus above the first lien, but had to provide cash for the first lien and costs. The partnership and another second lienholder bid the property in, and took a deed on a bid sufficient to cover the first lien and costs and the greater part of the face of their second liens. The partnership thus got a credit of $47,-431 by means of the notes it charged off as worthless two years before. It is conceded that this is taxable gain, but the partnership contends that it is not ordinary income, but a capital gain to be taxed only at fifty percent thereof. The Tax Court held the property bought was worth the bid, that the recoupment of the $42,200 deducted as bad in 1939 was ordinary income, and the excess gain of $5,431 might be either ordinary gain or capital gain, under Helvering v. Midland Mutual Life Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436, according to circumstances; and the taxpayer having the burden and not showing it otherwise the difference would be considered as interest on the $42,200, and thus ordinary income.

We do not find the cases cited by the Tax Court or the petitioner decisive of this case. Petitioners put forward Int. Rev.Code, Sec. 111, 26 U.S.C.A. Int.Rev. Code, § 111, as to the computation of gain or loss "from the sale or other disposition of property." That Section cannot apply to these notes, for they were not sold to a third person, but paid by the debtor through the bankruptcy court out of the proceeds of sale of his property, as the decree of sale expressly states. Petitioners also cite Treasury Regulation 103, Sec. 19.23k-3, on the subject of the uncollected deficiency on sale of mortgaged property, the general principle being that the fair market value of the mortgaged property bought in is to be compared with the amount of the obligations applied to the bid. The Regulation however makes the bid presumptively the fair value, and here the Tax Court has held it was; and only $47,431 of the obligations was applied to the bid here. It is true that the excess of obligations held by the partnership against the bankrupt was lost by the bankruptcy, but it was not a loss in that year because credit had been taken in 1939 for all these obligations as worthless debts at the full investment in them. The partner-

ship had nothing more in them to lose. All it got in 1941 by means of them was gain. Several of the notes were originally payable to Joe A. Humphrey who testifies he was acting for the firm, which was therefore the lender. It does not appear just how the partnership got the others or on what investment, nor which notes were used in payment at the sale. We cannot say that the $5,431 realized beyond the $12,200 agreed original investment in them all is other than ordinary gain, perhaps interest which the notes earned on their true consideration. On this question the judgment of the Tax Court is affirmed.

2. As to the wagering losses the Tax Court found that Joe A. Humphrey lost $3,000 in the tax year and won a larger sum, the wagers being on card games, a football game and horse races. There is no evidence in the record as to the circumstances of any of the bets. The Tax Court upheld the inclusion of the wagering gains as income, but denied the deduction of the losses on the ground that, the taxpayer having the burden, he had not shown that the losing wagers were in transactions entered into for profit, as required by Int.Rev.Code, Sec. 23(e), 26 U.S.C.A. Int.Rev.Code, § 23(e). As authority the Tax Court cites Beaumont v. Commissioner, 25 B.T.A. 474, affirmed Beaumont v. Helvering, 63 App.D.C. 387, 73 F.2d 110. The cited case arose about taxes in 1926, 1927 and 1928, before wagering gains and losses were specially dealt with by Congress, and the only law that could be applied was Sec. 23(e). A like case is Citizens' & Southern Nat. Bank v. United States, 14 F.Supp. 915, 83 Ct.Cl. 618. The governing statute in the present case is the Internal Revenue Code, which is itself a single great statute and expressly repeals the prior statutes embraced in it. Int.Rev.Code, Sec. 4, 26 U.S.C.A. Int.Rev. Code, § 4. We need not go behind Section 23 as it appears therein. It reads: "In computing net income there shall be allowed as deductions * * * (h) Wagering Losses. Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions. * * *" There follow other classes of deductions through the letter (s). It is argued that Par. (h), Wagering Losses, is only a gloss on or an addition to Par. (e), and that (e) still governs such losses. We do not think so. If that had been the intent of Congress the matter of (h) would simply have been placed in (e). Instead the deductions (f) and (g) intervene, and are independent of (e); as is (h) which follows them. Each lettered paragraph authorizes a class of deductions. Wagering losses are made a class to themselves and "shall be allowed as deductions", but "only to the extent of gains from such transactions." No longer need it be enquired whether the wagers were illegal so that the loss need not have been paid; nor what the state of mind of the taxpayer was as respects his purpose to win a profit. All wagers are by Par. (h) gathered into a class of their own and dealt with as the paragraph states. It is not necessary for the loser to prove he intended to win. The deduction for the losses ought to be allowed to the extent Sec. 23(h) requires.

The judgment is affirmed save as to the wagering losses of Joe A. Humphrey, and as to him it is reversed with direction to redetermine his taxes in accordance with this opinion.

HOLMES, Circuit Judge (dissenting in part).

I think that Section 23(h) was not intended to liberalize the allowance of deductions on account of wagering losses as theretofore made under Section 23(e). On the contrary, it was intended to constitute an additional restriction upon their allowance under said subdivision (e) as that subdivision formerly had been construed, namely, as allowing deductions on account of such losses in full, but only if incurred in the taxpayer's trade or business or in transactions entered into for profit.[1]

---

[1] "This view is further substantiated by the testimony of Dr. Magill given at hearings, originally confidential, held by the Finance Committee of the Senate on March 6, 1934, entitled, Hearings before the Committee on Finance, United States Senate, 73d Cong., 2d Sess., on H. R. 7835, An Act to Provide Revenue, Equal-

The taxpayer does not contend that he was engaged in gambling as a trade or business. In 1941, he engaged in only three wagering transactions. One involved a bet on a football game and another on a horse race; both of which he won, resulting in an aggregate gain of $2,140, which the Commissioner included in his gross income. The third resulted in a loss of $3,000, but the character of this transaction was not shown. As to whether it was entered into for profit, the Tax Court, in its opinion, stated that the record contained no evidence upon that point, and that it must accordingly be disposed of in conformity with the burden of proof, which in this instance rested upon the taxpayer.[2]

Section 22(a) clearly requires that gains from gambling transactions be included in gross income, not that only the excess of gains over losses be so included; and Section 23(e) and (h) permit their deduction only to the extent that the transactions in which they were sustained were entered into for profit. There is no warrant for the conclusion that only net gambling losses are envisaged thereby. Since it clearly appears that the taxpayer was not engaged in gambling as a business and that the transactions here involved were isolated ones, there is no basis for saying that these transactions were so closely related as to warrant the conclusion that they constituted a single transaction in which the net result might be said to represent the gain or loss. The Tax Court held otherwise; whether its ruling be regarded as a finding of fact, a conclusion of law, or a mixed finding of fact and law, its decision in disallowing the deduction for wagering losses, the character of which was not shown, should not be disturbed. I dissent from the reversal of the Tax Court's decision as to wagering losses, but concur in the remainder of the majority opinion.

---

ize Taxation, and for Other Purposes, Part 1, March 6, 1934 (Unrevised 1934), pp. 32–33, where Dr. Magill, so far as material here, testified as follows:

"Dr. Magill. The next paragraph (g), is a new provision which is self-explanatory, that losses from wagering transactions are to be allowed only to the extent of gains from such transactions.

\* \* \* \* \* \* \*

"The Chairman. Explain that paragraph.

\* \* \* \* \* \* \* \*

"Dr. Magill. \* \* \* The line which the Treasury draws, is, I believe, whether or not the particular gambling transaction was legal in the State in which it occurred; and they have gone into a good deal of dissertation as to whether it is legal gambling.

\* \* \* \* \* \* \*

"Senator Reed. Also, haven't they discussed the question of whether that is the taxpayer's regular business?

"Dr. Magill. You wouldn't need to in this connection, because he could get the deduction as a loss, *if the transaction was entered into for a profit*, in the event that the transaction was legal. (Italics supplied.)" Note 5, p. 16 of respondent's brief.

[2] Beaumont v. Helvering, Commissioner, 25 B.T.A. 474, affirmed 63 App.D.C. 387, 73 F.2d 110, certiorari denied, 294 U.S. 715, 55 S.Ct. 512, 79 L.Ed. 1248. This case was cited with approval in Helvering v. National Grocery Co., 304 U.S. 282, 289, note 5, 58 S.Ct. 932, 82 L.Ed. 1346, upon the deductibility of losses under 23(e) being made to depend upon whether the taxpayer's motive was primarily for profit.