James T. Shiosaki v. Commissioner.
Shiosaki v. Commissioner
Docket No. 2365-70 SC.
United States Tax Court
T.C. Memo 1971-24; 1971 Tax Ct. Memo LEXIS 309; 30 T.C.M. (CCH) 110; T.C.M. (RIA) 71024; February 1, 1971, Filed James T. Shiosaki, pro se, 555 E. 8th St., Azuza, Calif. Robert H. Feldman, for the respondent. SACKS Memorandum Findings of Fact and Opinion SACKS, Commissioner: Respondent determined a deficiency in the income tax of petitioner for the taxable year 1967 in the amount of $393.76. The sole issue for decision is whether or not expenses incurred by petitioner in traveling to and from Las Vegas, Nevada for the purpose of engaging in gambling are deductible as ordinary and necessary expenses paid or incurred for the production of income within the purview of section 212(1) of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated by the parties. Their stipulation, together with an attached exhibit, is incorporated herein by this reference. James T. Shiosaki, hereinafter referred to as petitioner, is an individual who resided in Azuza, California at the time of filing his petition herein. His Federal income tax return for the taxable year 1967, made on the cash basis and for the calendar year period, was filed with the district director of *311 internal revenue, Los Angeles, California. Petitioner is an electrical engineer. He graduated from college in 1957 and has been employed regularly as an electrical engineer since then. Between 1960 and the present, his annual salary has been approximately $15,000.00. During the summer of 1957 petitioner took a trip to Las Vegas, Nevada for the purpose of recreation. On this trip he was introduced to the gambling game of craps. His curiosity was stimulated by this game, and he thereafter began to read books dealing with craps as well as to observe others gambling at craps in order to devise a method of pursuing the game which would give him some assurance of being able to make winnings. Beginning approximately in 1959 petitioner regularly went to Las Vegas, on the average of six or seven times a year, for the purpose of gambling - principally at craps. Initially, he was quite successful, aggregating net winnings of $6,426.00 during 1959. Since 1959, however, his annual performance has been uniformly bad, and he has suffered net losses in each of the years 1960 through 1969, the sum total of which is approximately $50,000.00. For example, he lost between $3,500.00 and $8,500.00 *312 in 1966, $8,700.00 in 1967, $5,600.00 in 1968, and between $5,000.00 and $10,000.00 in 1969. By comparison, his gross winnings during the entire period 1960 through 1969 are not significant when measured against his gross losses for the same period. Moreover, during all of this time his primary source of funds for gambling remained his wages - of about $15,000.00 per year - derived from his regular employment as an electrical engineer. Throughout the years 1959 through 1969 petitioner made an extensive study of the game of craps. He has been able, however, to evolve no "system" which is consistent in producing winnings, and has therefore adopted the expedient merely of betting large amounts when winning and small amounts when losing. Familiarity with gambling has led him to the observation that while everyone who gambles does so with the intent of winning, only a small percentage, i.e., very few individuals, win at the game of craps. Petitioner made twelve trips to Las Vegas in 1967 for the purpose of engaging in gambling. These twelve trips produced, 111 in the aggregate, gross winnings of $1,300.00, and gross losses of $10,000.00. Petitioner also incurred the following expenses *313 in connection with the twelve trips: Transportation to and from airport
$ 72.00
Air tickets
413.70
Air insurance
22.00
Hotels
372.31
Meals
167.00
Cabs
129.00
Auto storage 54.50
Total $1,230.51 On his Federal income tax return for the taxable year 1967 petitioner reported gambling winnings of $1,300.00 and gambling losses of $1,300.00 (the maximum loss allowable under section 165(d) [1] of the Internal Revenue Code of 1954). He also claimed a deduction in the amount of $1,230.51 as "expenses incurred in obtaining gambling income." In his notice of deficiency respondent disallowed this claim on the ground that the same was a nondeductible personal expense. *314 Ultimate Finding Petitioner has failed to prove that the expenses he incurred in traveling to and from Las Vegas, Nevada for the purpose of engaging in gambling were ordinary and necessary expenses paid or incurred for the production of income within the purview of section 212(1) of the Internal Revenue Code of 1954. Opinion It is petitioner's position that the expenses which he incurred in connection with his trips to Las Vegas for the purpose of gambling are expenses paid "for the production of income" and should therefore be allowable as a deduction under section 212(1) [2] of the Internal Revenue Code of 1954. In support of this position petitioner argues that gambling is an income producing activity - indeed, that he would not pursue this activity were it not for the fact that income can be produced - and that the continuity, regularity and financial depth with which he has engaged in gambling demonstrate his intent to become successful in making it a source of income. Therefore, he contends, any expenses incurred in connection with this activity fall within the ambit of section 212(1). *315 Respondent takes an opposite position. He argues that the expenses in question do not qualify for deduction under section 212, nor any other section, but rather fall within the category of personal expenses specifically denied deduction under section 262. [3]
At the outset we must observe that the exact question thus presented is one of uniqueness for this Court. In Edward T. Dicker, 22 T.C.M. 345 (1963), we were faced with similar facts, but our decision turned upon a different section of the Code. There, the taxpayer claimed expenses of $600.00 incurred on a trip to Las Vegas (where he won $1,600.00) as a loss sustained in a "transaction entered into for profit" within the meaning of section 165(c) (2). [4] We disallowed the claim, with little discussion, on the ground that the expense was a personal one within the purview of section 262 and section 1.212-1(c) of the Income Tax Regs.[5]
*316 112 Petitioner, in contradistinction to Edward T. Dicker, supra, has predicated his claim upon section 212(1). That section allows as a personal deduction all the ordinary and necessary expenses paid or incurred during the taxable year "for the production * * * of income." Although this statute is silent as to the meaning of the phrase "for the production * * * of income," our view is that these words envision a transaction motivated by a profit seeking purpose. Margit Sigray Bessenyey, 45 T.C. 261, 273 (1965), affd. 379 F. 2d, 252 (C.A. 2, 1967), cert. den. 389 U.S. 931 (1967). [6] As we said in the Bessenyey case: That purpose [i.e., the profit seeking purpose] may in fact exist even in the face of a history of losses unaccompanied by any gains whatever, but the deductibility of those losses must depend upon the taxpayer's proven intention that he sought to realize a profit. It is to be noted that we recognized *317 in the Bessenyey case it was not "crucial that the expectation of profit be a reasonable one." We pointed out that It is enough that the taxpayer has a bona fide expectation of realizing a profit irrespective of the reasonableness of his expectation; but a record of continued losses over a series of years or the unlikelihood of achieving a profitable operation may be an important factor bearing on the taxpayer's true intention. In the instant case, petitioner has testified as to his consistent and substantial losses over the period 1960 through 1969. While he has stated that he is hopeful that he will not continue to lose, and that he hopes future gains will more than make up for past losses, he has also rather candidly testified as to his dearly purchased knowledge that only a small percentage, or very few individuals, win at the crap table. The Court has thought long and hard about this case. Of the many opinions which we have read in an effort to be guided toward a resolution of the issue presented, perhaps the most apt is that of Citizens & Southern Nat'l. Bank v. United States, 14 F. Supp. 915 (Ct. Cl., 1936). There the Court of Claims was called upon to decide *318 whether a taxpayer's gambling transactions were motivated by a profit seeking purpose where the evidence showed that he had consistently lost in many previous years. The Court said, ibid. at p. 918: In spite of the lack of success attending his efforts over six or seven years, and in the face of the fact that the [taxpayer] realized the odds were against him, and his past experience bore eloquent testimony to that effect, he testified that he played the game in 1931 for profit when he lost the large amounts which are now claimed as deductions * * *. What the [taxpayer] would have us believe is that, in a game where he had consistently lost for years and where he realized the odds were against him, he proceeded to that source for the purpose of realizing a profit * * *. * * * Such testimony overtaxes our credulity and stretches credence to the breaking point. We do not understand that every time a game of chance is entered into with the evanescent hope that the player will win constitutes a transaction entered into for profit within the meaning of the statute. In our opinion, the words used connote transactions for profit in the reasonable sense that any business is undertaken. *319 Surely, a reasonably prudent business man would not embark in a business venture where the odds were admittedly against him and where his own unbroken line of experience had demonstrated over a period of years that losses would be the only fruit of his efforts. Of course, many people engage in such pastimes, even though the vast majority of them lose, and it must be so, otherwise the gambling casino could not stay in existence. But profit in the business sense is not what usually motivates the continued playing; it is the thrill and exhilaration which are inherent in taking a chance. As the Board of Tax Appeals said in Louis D. Beaumont v. Commissioner, all gambling transactions are not entered into for profit within the meaning of the statute. The system evolved and used by the decedent, as a result of the study which he said he had made of the game, seems nothing more than a vaporous supposition that luck would attend his efforts if followed in a certain sequence, even though he knew the odds were against him and that losses by players made possible the continued operation of the club. It is our opinion that petitioner has failed to show that in incurring expenses for trips *320 113 to Las Vegas in 1967 to engage in gambling he was motivated by a bona fide profit seeking purpose. We have drawn this conclusion not from any determination that some hypothetical "reasonable man" faced with petitioner's consistent and continued losses could not expect a profit, but from a conviction that petitioner himself, were he not so inextricably caught up in the gambling game, could not expect, by reason of these sustained losses, to turn a profit. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for respondent. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. -in the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * (d) Wagering Losses. - Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; * * *↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
4. See fn. 1. ↩
5. SEC. 1.212-1(c)↩. Expenses of carrying on transactions which do not constitute a trade or business of the taxpayer and are not carried on for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, but which are carried on primarily as a sport, hobby, or recreation are not allowable as nontrade or nonbusiness expenses. The question whether or not a transaction is carried on primarily for the production of income or for the management, conservation, or maintenance of property held for the production or collection of income, rather than primarily as a sport, hobby, or recreation, is not to be determined solely from the intention of the taxpayer but rather from all the circumstances of the case. For example, consideration will be given to the record of prior gain or loss of the taxpayer in the activity, the relation between the type of activity and the principal occupation of the taxpayer, and the uses to which the property or what it produces is put by the taxpayer.
6. See also and compare Samuel Yanow, 44 T.C. 444↩ (1965) at 452 wherein the phrase "for the production of income" as used in sec. 167(a)(2), concerning depreciation, was similarly construed.